## SKINNER v. UNITED STATES.
### No. 795.

District Court, S. D. Ohio, W. D.
June 28, 1934.

Sidney G. Kusworm, of Dayton, Ohio, for plaintiff.

Frank J. Wideman, Asst. Atty. Gen., E. F. McMahon, Sp. Asst. to Atty. Gen., and Francis C. Canny, U. S. Atty., and Frederic W. Johnson, Asst. U. S. Atty., both of Cincinnati, Ohio.

NEVIN, District Judge.

On May 27, 1933, plaintiff herein filed his declaration (or petition) wherein he prays judgment against the defendant, United States of America, in the sum of $1,323.-85, which sum plaintiff alleges was assessed against him as manufacturer's excise taxes and paid by him to the collector of internal revenue for the First collection district of Ohio, on March 30, 1933, for the taxable period February 1, 1933, to February 28, 1933, inclusive, together with interest from March 30, 1933, and costs.

Plaintiff alleges in his declaration that he is a citizen of the United States and of the Southern district of Ohio, and that the controversy is one arising under the laws of the United States providing for internal revenue; that on March 30, 1933, in accordance with the provisions of the Revenue Act of 1932 (26 USCA § 3001 et seq.), plaintiff filed with the collector of internal revenue of the United States for the Southern district of Ohio, Western division, a return for the month of February, 1933, on retreaded tires which he sold during that month, and that he paid the manufacturer's excise tax thereon imposed under section 602 of the Revenue Act of 1932 (26 USCA §§ 3601–3629 note) "on new tires." He alleges that he made the return on the retreaded tires and paid the excise tax thereon for the reason that the Commissioner of Internal Revenue informed him on February 7, 1933, that, notwithstanding the fact that the retreaded tires sold or to be sold by plaintiff were stamped with the word "Retread" on each and every retreaded tire sold, nevertheless such retreaded tires are subject to tax when sold by virtue of section 602 of the Revenue Act of 1932; that on March 30, 1933, he filed with the collector of internal revenue, afore-

said, his proper executed claim for refund in the sum of $1,323.85 on the proper official form, and that his claim for refund set forth the following grounds as the basis for the refund, to wit: "1. Section 602 of the Revenue Act of 1932 imposing a tax on tires and inner tubes has reference only to complete newly manufactured articles; and that in holding retreaded tires to be subject to tax, the Commissioner of Internal Revenue exceeded the authority given to him under said Revenue Act of 1932. 2. Retreaded tires were known to the automobile industry for many years preceding the passage of the Revenue Act of 1932, were extensively advertised, and were well known commercial commodities, and that if Congress had intended that the tax should apply to such articles, it would have made specific provision therefor in said Revenue Act of 1932. 3. The retreading of the tire does not materially change the product so that it loses its original identity. 4. In the retreading of tires, in order to make same substantial, it is necessary for plaintiff to add rubber to the old tires, thus increasing the weight of the tire from six to ten pounds; that a tax on the basis of two and one-fourth cents a pound on the total weight of such retreaded tires (exclusive of metal rim or rim bases) places a larger tax burden on plaintiff than a manufacturer of new tires must pay; that a retreaded or second-hand tire, in order to be sold, must be sold for less than a new tire; that this tax burden upon plaintiff amounts to a confiscation of plaintiff's business and property, for the reason that plaintiff is forced into the position of competing, on secondhand or retreaded tires, with the product of the manufacturer of new tires, and by the action of the Commissioner of Internal Revenue in taxing retreaded tires on the same basis as new tires, this plaintiff, who has spent a very large sum of money in equipping his manufacturing plant for the retreading of tires and in building up the good will of his business in many parts of the United States, is forced to go out of business."

On July 25, 1933, an answer was filed on behalf of the defendant. Subsequently, on September 18, 1933, an amended answer was filed in the form of a general denial, denying, among other things, that section 602 of the Revenue Act of 1932, imposing a tax on tires, has reference only to complete newly manufactured tires, and denying that in holding retreaded tires to be subject to tax the Commissioner of Internal Revenue exceeded the authority given to him under the Revenue Act of 1932. It is further denied that retreaded tires were known to the automobile industry for many years preceding the passage of the Revenue Act of 1932; that the retreaded or secondhand tire, in order to be sold, must be sold for less than a new tire; that a tax on the basis of 2¼ cents a pound on the total weight of retreaded tires (exclusive of metal rim or rim bases) places a larger tax burden on plaintiff than a manufacturer of new tires must pay. That plaintiff is a citizen of the United States and that the controversy is one arising under the laws of the United States providing for internal revenue is admitted.

Defendant alleges that in the process of retreading the plaintiff materially changed the names and other identification marks of tires as originally manufactured and caused the tires to be put back into service under other, new, and different names.

Subsequently, plaintiff filed his reply, denying that the retreaded tires involved lose their original identity through the process of retreading, or that the manufacturer's name or numbers originally placed on the tires were removed or destroyed.

On November 20, 1933, counsel for the respective parties, in writing, waived the right of trial by jury and agreed to and did submit the cause, both upon the facts and upon the law, to the court. On the same day that the jury was waived, the cause came on for hearing before the court, at which time, before the taking of any testimony, there was submitted and made part of the record a stipulation with respect to certain facts which were agreed upon and which it is agreed should be taken by the court as true, the stipulation providing that other evidence might be introduced not inconsistent with the facts set out in the stipulation. In addition to a statement as to the identity of the parties to the action, the stipulation (Exhibit 1) contains the following:

"4. Plaintiff made and filed its manufacturer's excise tax return for the taxable period February 1, 1933, to February 28, 1933, inclusive, showing the amount of the tax due thereon, which was duly assessed on such return by the Commissioner of Internal Revenue, paid by plaintiff, for the month, in the amount, and on the date hereinafter set forth, as follows:

| Period | Year | Month | Year | Page | Line | Amount | Date paid |
|---|---|---|---|---|---|---|---|
| February | 1933 | March | 1933 | 1038 | 3 | $1,323.85 | Mar. 30, 1933. |

"5. On March 30, 1933, plaintiff filed its claim for refund #ST5938 of manufacturer's excise tax so paid on tires for the period February 1, 1933, to February 28, 1933, inclusive, in the amount of $1,323.85, which was duly rejected by the Commissioner of Internal Revenue on May 22, 1933. 6. Copies or originals of the return, claim for refund, report, letters and other departmental records pertinent to the issues in this case, hereto attached, shall be admitted and received in evidence the same as if the originals thereof were properly identified and admitted, subject only to the right of either party to object because of their irrelevancy or immateriality."

In addition to the stipulation and the evidence by way of exhibits attached thereto, the testimony of three witnesses was offered in open court, to wit, Messrs. Hood, Roper, and Skinner, all called on behalf of plaintiff. There were also a number of exhibits introduced through these witnesses, reference to which is made from time to time in the record. No witnesses were called on behalf of the defendant, nor were any exhibits offered on behalf of the defendant.

After the case had been submitted, but while it was still under consideration by the court and before any decision had been rendered herein, plaintiff, on March 27, 1934, filed a motion for leave to amend his declaration "so as to conform to the evidence with regard to the fact that plaintiff has not included the tax in the price of the retreaded tires with respect to which it was imposed, or collected the amount of tax from the vendees." On April 2, 1934, the court sustained this motion, Gen. Code Ohio, § 11363, United States v. Jefferson Electric, etc., Co. (Routzahn, Collector, v. Willard Battery Co.) 291 U. S. 386, 410, 411, 54 S. Ct. 443, 78 L. Ed. 859, and thereupon, on the same day, plaintiff filed an amended declaration, which declaration is exactly in all respects the same as the original declaration except that the amended declaration contains this additional allegation, to wit, "Plaintiff further says that he has not included the tax on said retreaded tires in the price of the retreaded tires with respect to which it was imposed or collected the amount of tax from the vendees."

On the same day, defendant filed a motion to strike this allegation from plaintiff's amended declaration, which motion was overruled, and thereupon, on April 2, 1934, defendant moved for leave to reopen the case "for the reason that it may go more fully into those matters now made a part of this case by virtue of the Court's action in sustaining plaintiff's motion for leave to amend its declaration to conform to the evidence."

On May 11, 1934, the court sustained this motion made on behalf of the defendant and granted defendant leave to reopen its case for the purposes requested, and thereupon there was filed on the same day a stipulation signed by counsel for all the interested parties, which reads as follows: "It is hereby mutually stipulated between the parties hereto that, in the event of a decision in this case which is favorable to the plaintiff, the items of tax as shown by the records in this case, now appearing on plaintiff's books as charged to a suspended expense account, will be charged to 'profit and loss' in the year for which it has been deducted as an expense. It is hereby further mutually stipulated that, in the event of a decision in this case which is adverse to the plaintiff, the items of tax as shown by the record in this case, now appearing on plaintiff's books as charged to a suspended expense account, will be charged to 'selling expense.' It is hereby further mutually stipulated that this stipulation and its contents may be received and considered by the Court as evidence in this case." With the filing of this stipulation, the court was informed by a letter from counsel that there would be no further evidence and that the government "again rests its case."

At the conclusion of the taking of all of the testimony and the final submission of the case, a motion for judgment in its favor was filed on behalf of the defendant. The court was asked also to dismiss plaintiff's petition or declaration at plaintiff's costs. At the time, the court took this motion under consideration. This motion is now overruled.

There is substantial proof supporting the claims of plaintiff, as alleged in his original and amended declaration. Mr. Roper testified, among other things, that he was the service manager for the Dayton Rubber & Manufacturing Company; that he was in charge of adjustments or claims on tires and had been so employed for practically fourteen years; that he was acquainted with the business of manufacturing new tires and the business of retreading tires; that he had been with the Goodrich Company at Akron, Ohio, for about five years; and that retreading of tires had been done quite extensively for at least twenty-five years. He was asked (Rec. p. 8): "Q. What does the retreading of a tire consist of? A. The re-

moval of the old rubber to the point where the additional rubber can be secured to the carcass. That may require the removal of all of the rubber down to the fabric, and then the proper cementing method is gone through with and additional rubber applied and the unit vulcanized." He stated that he was acquainted with the tire industry throughout the United States, especially in the large tire-producing states, such as Ohio, Illinois, and New York.

Mr. Skinner testified (Rec. p. 11) that he had been retreading tires "as far back as 1919," and there was offered in evidence as Plaintiff's Exhibit No. 2 a tire which the witness testified (Rec. p. 11) he had obtained "from a dealer that I had sold to about ten years ago, and he still had it on hand," and that this tire was retreaded in 1923. He stated that even as early as 1918 he had done some retreading, but at that time he only had one man working, and (Rec. p. 12) "we did not retread very many, two or three a day," that in 1923 his business became more extensive, retreading as many as fifteen or twenty a day, and that the business has continued developing on up to the present time.

Testimony was offered with respect to the weight of tires, both as a new tire and as a retreaded tire. For example, Plaintiff's Exhibit No. 10 (Rec. pp. 19, 20), is a new Firestone tire, size 19x4.75; it weighed (upon a test made in open court on a scale produced by the Toledo Scale Company) 17 pounds and 12 ounces. A retreaded tire of exactly the same size and make (Plaintiff's Exhibit No. 11), retreaded from bead to bead, weighed 22 pounds 3½ ounces (Rec. p. 20). A Goodyear tire, 18x5.25 (Plaintiff's Exhibit No. 12), new, weighed 18 pounds and 2 ounces. The same kind of tire retreaded from bead to bead (Plaintiff's Exhibit No. 13) weighed 22 pounds and 6 ounces (Rec. pp. 20, 21). Other exhibits of the same character and to the same effect were introduced in evidence and are part of the record. The record shows that in all instances the tires are marked "Retreaded" (Rec. pp. 15, 16, Plaintiff's Exhibit No. 7) and are shipped and billed as "Retread" or "Rebuilt" (Rec. p. 43). It shows further that the name of the original manufacturer, such as "Goodyear," "Firestone," etc., was in most instances not eliminated or taken off of the tire, but remained where usually it could be seen without difficulty. The evidence (Rec. p. 15) shows that plaintiff purchases molds "from bankrupt concerns and uses them over." "Q. Where do you get these molds? A. Well, the original molds we picked up first from one

bankrupt after another; different tire companies over the country that went bankrupt or out of business." That the name indented in the molds and imparted to the retreaded tires varies as the molds acquired from various companies are used, as for example, the "Retreaded" (so marked) tire, Exhibit No. 7, had the word "Corliss" on it, because it (Exhibit No. 7) was retreaded in a mold of that name, but the record shows (page 16) in this connection that:

"Q. The word 'Retread' appears on the tire, doesn't it? A. Yes, sir.

"Q. It appears in such a way that after you put the tire on the rim the word 'Retread' is still very visible, isn't it? A. Yes.

"Q. So that the word 'Goodyear' appears on both sides of the tire, and also the word 'Corliss,' which is the name of the mold? A. Yes, sir.

"Q. And this is the tire that the Government said has lost its identity and is subject to tax? A. Yes, sir."

The record also shows (Plaintiff's Exhibit No. 20, Rec. pp. 29, 30) that retreaded tires were sold and of necessity had to be in order to market them at about 50 per cent. of the selling price (to dealers) of similar new tires.

Counsel for the government (Rec. p. 6) stated in open court as follows: "Regarding this case at the outset, it has resolved itself down in the last analysis to this proposition—that is, whether or not this taxpayer is a manufacturer or producer of a taxable tire within the meaning of the provisions of those sections, the result of which calls for a conclusion of law in conformity with that statute, the regulations and the rulings issued pursuant thereto." And in their brief (page 3) they state that the questions presented are: "1. Whether the provisions of section 621, title 4, Revenue Act of 1932 [26 USCA §§ 3601–3629 note], and Regulations 46, article 71, preclude recovery in this action for the recovery of tax paid or collected under the provisions of section 602, title 4, Revenue Act of 1932 [26 USCA §§ 3601–3629 note]. 2. Whether the sales of retreaded tires involved are taxable as sales of tires wholly or in part of rubber, within the meaning of the provisions of section 602, title 4, Revenue Act of 1932, and Regulations 46, Articles 2, 3, 4, 19, 20 and 21, promulgated thereunder."

The pertinent provisions of the statutes and regulations involved are as follows:

Section 602, Revenue Act 1932. "There is hereby imposed upon the following articles

sold by the manufacturer, producer, or importer, a tax at the following rates: (1) Tires wholly or in part of rubber, 2¼ cents a pound on total weight (exclusive of metal rims or rim bases), to be determined under regulations prescribed by the Commissioner with the approval of the Secretary."

Article 2, Regulations 46, definitions and use of terms, provides: "As used in these regulations, unless obviously inapplicable, the term 'manufacturer' is used to include 'producer.' * * * "

Article 4, Regulations 46, who is a manufacturer or producer, provides: "As used in the Act, the term 'producer' includes a person who produces a taxable article by processing, manipulating, or changing the form of an article, or produces a taxable article by combining or assembling two or more articles. * * * "

"Sec. 621. *Credits and Refunds.* * * * (c) In no case shall interest be allowed with respect to any amount of tax under this title credited or refunded. (d) No overpayment of tax under this title shall be credited or refunded (otherwise than under subsection (a), in pursuance of a court decision or otherwise, unless the person who paid the tax establishes, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, (1) that he has not included the tax in the price of the article with respect to which it was imposed, or collected the amount of tax from the vendee. * * * "

The pleadings and evidence disclose that the plaintiff seeks recovery in conformity with the conditions prescribed by the provisions of subdivisions (c) and (d), just above quoted, of section 621.

Attached to the stipulation (Exhibit No. 1) (hereinbefore referred to) are a number of exhibits. Among others, Plaintiff's Exhibit 1–B, a letter dated August 5, 1932, from the office of the Commissioner of Internal Revenue, Washington, D. C., signed by a deputy commissioner, which reads as follows: (Letterhead) "Treasury Department, Washington, Office of Commissioner of Internal Revenue * * * Skinner Tire & Rubber Co., Dayton, Ohio. Gentlemen: Reference is made to your letter dated June 14, 1932, requesting to be informed whether or not the tax attaches to certain articles that you use in repairing tires. You are advised that retreaded and repaired tires, rubber cement, boots, tire rim flaps and cord repair material are nontaxable articles. If you will submit a sample of a tube repair kit, a ruling will be given you on this questionable arti-

cle. Respectfully, (Signed) R. M. Estes, Deputy Commissioner."

Plaintiff's Exhibit 1–E, dated October 13, 1932, being in response to a letter to the Commissioner, dated October 1, 1932, reads as follows: (Letterhead) "Treasury Department, Washington, Office of Commissioner of Internal Revenue * * * Arnold, Hawk & Co., 717–18 Winters Bank Bldg., Dayton, Ohio. Gentlemen: Reference is made to your letter dated October 1, 1932, inquiring relative to the taxability of retreaded tires. In reply you are advised that the process of retreading tires by vulcanization is held to be a repair rather than a manufacturing process. No tax attaches to the sale of such rebuilt tires. Respectfully, (Signed) R. M. Estes, Deputy Commissioner."

Thus it appears that as late as October 13, 1932, the office of the Commissioner of Internal Revenue ruled that these retreaded tires were "a repair rather than a manufacturing process" and therefore nontaxable. It was not until February 7, 1933 (Plaintiff's Exhibit 1–F), that this ruling was changed, and was not until after the letter from the Commissioner, dated March 16, 1933 (Plaintiff's Exhibit 1–G), that there was a final determination. The record shows a still further letter under date of April 5, 1933 (Plaintiff's Exhibit 1–J), addressed to Messrs. Arnold, Hawk & Company, Dayton, Ohio, calling attention to their earlier letter of October 13, 1932, with regard to the same matter.

The court is of the opinion that section 602 of the Revenue Act of 1932 was meant to apply only to newly manufactured tires and that it does not include retreaded tires, such as are involved in the instant case, and that, in holding that it does include such retreaded tires, the Commissioner of Internal Revenue has exceeded the authority granted him under the act, and that such an interpretation is not a proper interpretation of the act. The fact that retreaded tires were known to the automobile industry for a great many years preceding the Revenue Act of 1932 (a fact which is sworn to positively in this case and not in any way controverted or contradicted by the defendant) would certainly tend strongly to indicate that, if Congress had intended to include retreaded tires within the provision of this section, it would have plainly so stated. It appears that, in order to retread the tires, plaintiff has to add rubber to the old carcasses and thereby increase their weight, as hereinbefore indicated. With this weight added, a tax on the basis of the total weight (Regula-

tion 46, Revenue Act 1932, c. II, art. 20) of the retreaded tire, places a larger tax burden on the plaintiff than on the manufacturer of the new tire, and yet the record shows without contradiction that the retreaded tire is in effect a secondhand tire or, as stated, "a makeshift" and must of necessity be sold for very much less on the market than a new tire would bring. The court is of the opinion that plaintiff is not a manufacturer or producer within the meaning of the statutes and regulations. He is, as stated by the witness Roper in the record (page 9), "a repairman," and should be classified, and by the court is classified, as such.

All of the facts in this case, in the opinion of the court, tend strongly to show beyond any question that the language of section 602 with reference to tax on tires has reference wholly and solely to new tires and not such as are under consideration in the instant case.

Is plaintiff precluded from recovery in this action by section 621, title 4, of the Revenue Act of 1932, and Regulations 46, art. 71, promulgated thereunder? Plaintiff contends he paid the tax to the collector and did not collect the amount from his vendees, hence he is not precluded by the provisions of section 621 and the Regulations from recovery of the refund sought herein. The defendant contends that the provisions of such section and Regulations preclude recovery by plaintiff.

It is incumbent upon the plaintiff to allege and prove that he did not collect the tax from the purchasers or his vendees. (There is no claim upon the part of plaintiff that he collected the tax and thereafter returned it to his vendees.) United States v. Jefferson Electric Co. (Routzahn, Collector, v. Willard Company), supra. It was for this reason that the court gave leave to the plaintiff to amend his declaration to comport with the evidence in this action.

The record shows that "as part of the claim for refund" filed by plaintiff on March 30, 1933 (Plaintiff's Exhibit 1–L), plaintiff submitted to the Commissioner of Internal Revenue an affidavit setting forth the amount herein involved and stating that it "has not been included in the price of the retreaded tires sold by him" and "that he has not collected from vendees of said retreaded tires sold by him said sum of $1323.85 or any part thereof." In addition, plaintiff testified before the court (Rec. p. 57) that this amount had not been collected from the vendees of the retreaded tires, and (Rec. p. 58):

"The Court: If you sold the tires for $2.85, that was the regular price? A. Yes, sir.

"The Court: You did not add fifty cents to each one of them to try to make up for the government tax, in other words? A. No, sir."

There was some effort upon the part of counsel for the government to ascertain from what source plaintiff received the money with which he paid the tax to the government (Rec. pp. 59, 60, et seq.), but the court is of the opinion that this is not material in view of the fact that the record bears out the claim of plaintiff that he did not collect it from his vendees, in the sense that he added anything to his regular price list in order to take care of the tax. In other words, the record bears out the claim of plaintiff that he and he alone will be out of pocket the sum of $1,323.85 if the tax is not refunded. In the sense the language is used in the statute, plaintiff "has not included the tax in the price of the article with respect to which it was imposed or collected the amount of tax from the vendee." In fact, in their brief (page 16) counsel for the government state: "The evidence discloses that plaintiff did not add the amount of the tax as a separate item on his invoices nor increase the price of his tires by the amount of the tax. * * *" Not only is there the sworn testimony of plaintiff to this effect, but an analysis of the exhibits attached to the stipulation, (Exhibit No. 1) having particular reference to the correspondence back and forth between plaintiff and his representatives and the Commissioner of Internal Revenue, shows almost conclusively that plaintiff, in the nature of things, could not and would not have added any sum to be paid by the vendees, to be later applied by plaintiff in the payment of taxes, for the reason that before February 7, 1933, plaintiff had been, as shown by Plaintiff's Exhibits 1–B and 1–E, repeatedly assured that there was no tax by him to be paid on his retreaded tires. The first notice that plaintiff had of a ruling by the Commissioner that he was liable for a tax on retreaded tires was the letter to him from the Commissioner dated February 7, 1933 (Exhibit No. 1–F). This is evidenced by the last paragraph in that letter, which reads as follows: "In view of the fact that your company has heretofore acted under advice from this office, this ruling will be effective as to all taxable retreaded or rebuilt tires sold subsequent to the date of this letter. Respectfully, (Signed) David Burnet, Commissioner."

As heretofore indicated, the Commissioner of Internal Revenue did not, however,

finally notify plaintiff that in his judgment (the Commissioner's) he was liable or subject to tax under section 602 of the Revenue Act of 1932, until March 16, 1933 (Plaintiff's Exhibit 1–G).

The tax assessed in the instant case was for the taxable period covered by the month of February, 1933, to wit, from February 1, 1933, to February 28, 1933, inclusive. Certainly up until February 7, 1933 (and it appears most probable not until after the end of that period, to wit, February 28, 1933), there had been no final indication to plaintiff herein that the article which he was selling would be subject to any tax, and consequently it would seem that, when plaintiff testifies that he has not included the tax in the price of the article and has collected nothing by way of this tax from his vendees during the period in question, his statement should be taken as true and correct in the light of the circumstances as they existed at the time.

Plaintiff prays not only for the amount of the tax which he paid, but also for "interest at six per cent per annum from March 30, 1933" (the date upon which the tax was paid).

As hereinbefore set out, subdivision (c) of section 621 provides that "in no case shall interest be allowed with respect to any amount of tax under this title credited or refunded." This provision precludes the recovery of the interest claimed by plaintiff in this action.

Under the law and the evidence as adduced before the court and made part of the record in this case, the court has arrived at the following:

### Findings of Fact.

1. J. C. Skinner, doing business as Skinner Tire & Rubber Company, 129 North Halloway street, Dayton, Ohio, plaintiff herein, during the times hereinafter mentioned was and now is a resident of the city of Dayton, state of Ohio, and this judicial district.

2. Plaintiff made and filed its manufacturer's excise tax return for the taxable period, February 1, 1933, to February 28, 1933, inclusive, showing the amount of tax due thereon, which was duly assessed on such return by the Commissioner of Internal Revenue, paid by the plaintiff for the month, in the amount and on the dates hereinafter set forth as follows:

3. On March 30, 1933, plaintiff filed its claim for refund No. ST3238 of manufacturer's excise tax so paid on tires for the taxable period February 1, 1933, to February 28, 1933, inclusive, in the amount of $1,323.85, on the grounds that section 602 of the Revenue Act of 1932 has reference only to complete newly manufactured articles; that in holding retreaded tires subject to tax the Commissioner exceeded his authority under the law; that retreaded tires are commercial commodities; that retreading of a tire does not materially change the product so that it loses its original identity; that, due to the weight, a larger tax burden is placed on the manufacturer of retreaded tires than in the case of new tires; that the placing of such tax burden on the manufacturer of retreaded tires amounts to confiscation of his business; and that no tax under section 602 of the Revenue Act of 1932 can be imposed upon the sale of retreaded tires under the decisions rendered in the cases of National Rubber Filler Co. v. United States, 63 Ct. Cl. 337, and Auburn Rubber Co. v. United States, 67 Ct. Cl. 49, which was rejected by the Commissioner of Internal Revenue on May 22, 1933.

4. Retreaded tires were known to the automobile industry for many years preceding the Revenue Act of 1932.

5. Retreaded tires were and are extensively advertised commodities and were and are generally known commodities.

6. The plaintiff is not a manufacturer or producer within the meaning of the statutes and regulations.

7. Tire retreading as the plaintiff performs the process does not materially change the product so that it loses its identity.

8. A retreaded tire is a secondhand tire and not a new tire.

9. When the word "retread" appears on a retreaded tire, the said tire does not lose its identity and cannot be mistaken by the public for a new tire.

10. A retreaded tire is a makeshift of the original tire and is not in any sense of the word a new product.

11. In order to retread tires substantially, the plaintiff must add rubber to old carcasses and thereby increase their weight.

12. When a tire is retreaded, from four to ten pounds of weight is added over the

| Period | Year | Month | Year | Page | Line | Amount | Date paid |
|--------|------|-------|------|------|------|--------|-----------|
| February | 1933 | March | 1933 | 1038 | 8 | $1,323.85 | Mar. 30, 1933. |

original weight of a new tire the same size and weight.

13. A tax on the basis of the total weight of a retreaded tire places a larger burden on the plaintiff than the manufacturer of a new tire must pay.

14. A retreaded or secondhand tire must sell for less on the market than a new tire in order to be sold.

15. The plaintiff by this tax is forced to compete on retreaded or secondhand tires with the products of manufacturers of new tires.

16. Plaintiff has not included the tax in the price of the article with respect to which it was imposed or collected the amount of the tax from the vendee or vendees.

## Conclusions of Law.

1. The provisions of section 621 of the Revenue Act of 1932, and Regulations 46, art. 71, promulgated thereunder, do not preclude recovery in this action for the recovery of the tax paid or collected under the provisions of section 602 of the Revenue Act of 1932.

2. The plaintiff has complied with all the statutory conditions constituting conditions precedent to the institution of this suit.

3. The plaintiff is not a manufacturer or producer of tires within the meaning of section 602 of the Revenue Act of 1932, and of Regulations 46, arts. 2, 3, and 4, promulgated thereunder.

4. The Revenue Act of 1932, § 602, in imposing a tax on tires and tubes, applies only to newly manufactured tires, and does not include retreaded tires.

5. In holding that section 602 includes retreaded tires, the Commissioner of Internal Revenue has exceeded the authority granted him under the Internal Revenue Act of 1932.

6. Retreaded tires being well known in the industry, since Congress did not mention them in the Revenue Act of 1932, Congress did not intend to tax them in that act. If Congress intended to tax retreaded tires, they would have been mentioned and specific provision would have been made therefor in the Revenue Act of 1932.

7. In the interpretation of statutes levying taxes, it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen. Gould v. Gould, 245 U. S. 151, 153, 38 S. Ct. 53, 62 L. Ed. 211; United States v. Merriam, 263 U. S. 179, 187, 188, 44 S. Ct. 69, 68 L. Ed. 240, 29 A. L. R. 1547.

8. Under the evidence, plaintiff has proven a cause of action against the defendant.

9. Plaintiff is entitled to judgment as prayed for in his declaration in the sum of $1,323.85.

10. Plaintiff is not entitled to recover interest on said sum of $1,323.85, and the prayer of plaintiff for interest on said sum from March 30, 1933, is denied.

11. An order may be drawn awarding judgment to plaintiff against the defendant herein in the sum of $1,323.85.